UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Amy R.,

   Plaintiff,

   v.

Commissioner of Social Security,

   Defendant.

Civil Action No. 2:20–cv–204–kjd

**OPINION AND ORDER**
(Docs. 16, 17)

     Plaintiff Amy R. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 16), and the Commissioner's motion to affirm the same (Doc. 17). For the reasons stated below, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the decision of the Commissioner is AFFIRMED.

**Background**

     Plaintiff was 31 years old on her alleged disability onset date of April 30, 2017. (AR 331.) She has a high school education and has taken some college courses. (AR 44.) She has worked as a pharmacy technician, a bank teller, a cashier, and a hotel concierge. (AR 45–51, 78.) She lives on her own in an apartment in Brattleboro. (AR 44–45, 349.)

     Plaintiff suffers from back and neck pain, sciatica, migraine headaches, fatigue, brain fog, difficulty learning and retaining information, insomnia, digestive problems including abdominal

pain and nausea, fibromyalgia, Lyme disease, joint and muscle pain, chronic pain syndrome, depression, anxiety, attention deficit hyperactivity disorder (ADHD), allergies, cystic acne, and intermittent head pain.  (AR 51–65.)  Plaintiff states that she wakes up in "rigid pain," making sitting up in bed and moving around difficult (AR 348), and that she has "[d]aily brain fog [and] fatigue," impairing her motor skills and decision-making (AR 349).  Plaintiff further states that she has "[c]onstant headaches [and] migraines," to the point where she does not want to do "much of anything," and functioning outside of her apartment is "quite painful due to sound, light[,] [and] movement."  (*Id.*)  As described by medical expert Dr. James Washburn at the administrative hearing on Plaintiff's claim, the medical records reveal that Plaintiff has diagnoses of myofascial pain syndrome, fibromyalgia, mild degenerative disease of the cervical spine, chronic back pain, and migraines.  (AR 68–70.)  Dr. Washburn also noted that there was a concern for "polypharmacy"[1] apparent in the record, given that Plaintiff was on multiple different medications at the same time.  (AR 70.)

In November 2017, Plaintiff stated in a Function Report that her daily activities are dependent on her pain level on any given day: some days she is mostly confined to her bed; other days she can do some household chores, go to doctor appointments, or go grocery shopping.  (AR 350–51.)  Plaintiff reports that she goes outside only to take out the trash and to attend medical appointments two or three times a week.  (AR 354.)  She has no social life (AR 356), other than friends and family stopping by once every one or two weeks to check in on her when she is feeling "well enough" (AR 355).  Plaintiff states that her hobbies are reading, watching television, hiking, and horseback riding; but of these, she can only read and watch television due to her physical pain and limitations.  (*Id.*)  Even reading and watching television are difficult for

---

[1] "Polypharmacy" is "[t]he administration of multiple drugs at the same time."  *Stedman's Medical Dictionary* 710450 (updated Nov. 2014) (Westlaw).

Plaintiff due to her migraine headaches and neck pain. (*Id.*) Plaintiff also states that she takes several medications that "could be causing side effects [and] drug interactions," and she is unsure if her feeling of being in "a constant state of fog" is from the medications or from her fibromyalgia. (AR 358; *see* AR 359 (medication list).)

Plaintiff filed her application for DIB in November 2017, alleging that she has been unable to work since April 30, 2017, due to herniated discs at C6 and C7, congenitally fused C2 and C3, ADHD, borderline personality disorder, anxiety, depression, insomnia, chronic headaches, fibromyalgia, and spondylosis.[2] (AR 302–03, 318.) Her application was denied initially and upon reconsideration, and she timely requested an administrative hearing. On September 24, 2019, Administrative Law Judge (ALJ) Matthew Levin conducted a hearing on the disability application. (AR 41–83.) Plaintiff appeared and testified, and was represented by counsel. A vocational expert (VE) also testified at the hearing, as well as a medical expert.

On October 9, 2019, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date of April 30, 2017 through the date of the decision. (AR 10–21.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–9.) Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on December 4, 2020. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R.

---

[2] Spondylosis is "any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* 840410 (updated Nov. 2014) (Westlaw).

§§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin first determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2017, her alleged disability onset date. (AR 13.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative changes of the cervical spine, fibromyalgia syndrome, migraine headache disorder, chronic

4

inflammatory response syndrome, ADHD, depression, anxiety, and a personality disorder. (*Id.*) The ALJ did not include chronic pain syndrome as a separate medically determinable impairment because he found it to be "likely related to [Plaintiff's] [f]ibromyalgia diagnosis." (*Id.*) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 13–15.)

Next, the ALJ determined that Plaintiff had the RFC to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a),[3] with the following additional limitations:

> [Plaintiff] needs the opportunity to alternate positions (between sit-stand) approximately 5 minutes per hour. She should avoid ladders, ropes and scaffolds. She should avoid hazards and driving. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to mold and to loud noises. She can understand, remember and carry out simple 1–3[-]step instructions. She can sustain concentration, persistence and pace over a typical workday and workweek in a low production setting (which should include no frequent task changes or high production norms). She can engage in normal interactions with co-workers, supervisors and the general public.

(AR 15.) Given this RFC, the ALJ found that Plaintiff was unable to perform any of her past relevant work as a cashier, concierge, pharmacy technician, or bank teller, as the work was actually or is generally performed. (AR 19.) Based on testimony from the VE, however, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of bench assembler, polisher [of] optical goods, or electronics inspector. (AR 20.) The ALJ concluded that Plaintiff had not been under a disability from the alleged onset date of April 30, 2017, through the date of the decision. (*Id.*)

---

[3] Although Plaintiff applied for benefits under both Title II and Title XVI of the Social Security Act, the Court hereinafter cites to only the regulations promulgated under Title II (20 C.F.R. § 404.1567 et seq.), which relate to disability insurance benefits, and not to the parallel regulations promulgated under Title XVI (20 C.F.R. § 416.901 et seq.), which relate to supplemental security income.

**Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.

The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see Sesa v. Colvin*, 629 F. App'x

6

30, 31 (2d Cir. 2015). Nonetheless, in its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that the ALJ erred in his analysis of the April 2019 Functional Capacity Evaluation (FCE) of treating occupational therapist (OT) Joan Vansaun. (Doc. 16-1 at 13–15.) In addition, Plaintiff makes a cursory argument that the ALJ's decision fails to adequately explain his assessment of the medical opinion evidence regarding the amount of time Plaintiff is likely to be off task due to pain and other symptoms. (*Id.* at 15.) The Commissioner responds by reminding the Court of the applicable "very deferential" standard of review and asserting that the ALJ "acted well within the bounds of his considerable discretion by relying on assessments from multiple doctors, the objective evidence, [Plaintiff's] history of conservative and effective treatment, and [Plaintiff's] own admissions." (Doc. 17 at 1.)

After considering the parties' arguments and reviewing the record, I find that there is substantial evidence supporting the ALJ's decision and that the ALJ applied the correct legal standard.

**I.     ALJ's Analysis of OT Vansaun's FCE**

Plaintiff claims the ALJ "failed to provide an adequate evaluation of the limitations identified in the [FCE] completed by [OT] Vansaun in April of 2019." (Doc. 16-1 at 13.) Specifically, Plaintiff argues that because the ALJ found the FCE to be "reasonably persuasive" (AR 18), he should have incorporated into his RFC determination two specific findings contained in the FCE: (1) that Plaintiff is limited in her ability to reach or handle objects with her upper

extremities, and (2) that Plaintiff is able to sit for only 30 minutes before needing a five-minute break to change positions.[4]  (Doc. 16-1 at 14.)

### A.  Reaching and Handling Limitations

First, Plaintiff finds fault with the ALJ's failure to incorporate into his RFC determination the FCE's findings regarding Plaintiff's reaching and handling limitations.  I find no error.

Although the FCE notes that Plaintiff's "grip strength" was "below average range for her age and gender bilaterally," it also states that Plaintiff had the grip strength to lift 20 pounds on the right and 22 pounds on the left.  (AR 1730.)  The FCE further indicates that Plaintiff's upper extremity range of motion was "within normal limits" and upper extremity strength on the right was "5/5 throughout," although on the left there was "weakness [in] shoulder flexion, abduction, external rotation, elbow flexion, [and] wrist extension."  (*Id.*)  The FCE concludes that Plaintiff's symptoms had "caused her to decrease her activity level significantly"; that "deconditioning[] and fear-avoidance behaviors ([including] avoiding activity due to fear of increasing symptoms) [we]re significant factors in her limited functional level"; and that Plaintiff could "tolerate some but not all jobs in Sedentary or Sedentary Light physical demand categories."  (AR 1731.)

At the hearing, medical expert Dr. Washburn noted the FCE's "weakness" and "deconditioning" observations, stating that the FCE "reported that [Plaintiff] did have some weakness . . . , but it was probably due to deconditioning and lack of activity."  (AR 72.)  The ALJ acknowledged this comment of Dr. Washburn in the context of assessing the FCE, stating, "Dr. Washburn [stated] that [Plaintiff] was described as having some weakness due to 'deconditioning,'

---

[4] Plaintiff does not argue that the ALJ erred in his *overall* assessment of OT Vansaun's FCE, focusing only on the two findings discussed herein.  For reference, however, the ALJ found that, although the FCE was "reasonably persuasive," it was not "overwhelmingly" persuasive, given that (a) Plaintiff "has not been fully compliant with physical therapy/medication/rehab treatments"; (b) Vansaun "admits that [Plaintiff's subjective complaints] [are] not quantifiable"; and (c) the FCE "does not provide the function-by-function analysis applicable under Social Security Regulations for assessing [RFC]."  (AR 18.)

which is not quantified." (AR 18.) And the ALJ proceeded to properly assess the overall value of the FCE, concluding that although it is "reasonably persuasive, it is not overwhelmingly so." (*Id.*)

Plaintiff points to no error in the ALJ's assessment of the FCE with respect to Plaintiff's reaching and handling limitations, particularly because the FCE's finding that Plaintiff had the grip strength to handle objects weighing only approximately 20 pounds is accommodated in the ALJ's RFC determination. Specifically, the ALJ's RFC determination restricts Plaintiff to a limited range of sedentary work (AR 15), and under the applicable regulation, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a). There is no indication in the FCE that Plaintiff would be unable to lift (or grip) objects weighing 10 pounds or less, other than the following summary which, if anything, supports the ALJ's determination that Plaintiff could lift up to 10 pounds at a time:

> [Plaintiff] indicated she would have great difficulty picking up a lightweight object from floor, though she was able to bend to reach to floor level today without observable or reported great difficulty, e.g., full lumbar flexion. She indicated she would be unable to lower 10 [pounds] eye to floor level. She was able to lift 15 [pounds] from floor to shoulder level on test. Thus, *she may underestimate her functional abilities*.

(AR 1730–31 (emphasis added).) The FCE further states, in accord with the ALJ's RFC determination, that Plaintiff's "[l]ift capacity" was "a maximum of 15 pounds from floor to shoulder level, and she was able to carry 15 pounds bilaterally a distance of 40 feet." (AR 1731.)

Regarding reaching overhead, the FCE records that Plaintiff "was able to reach to overhead level and out away from her body but with increased shoulder and arm pain, left more than right with repetitive reach more than [one] minute." (AR 1730.) The first part of this finding—that Plaintiff "was able to reach overhead"—aligns with the ALJ's decision not to include any overhead reaching limitation in his RFC determination. The second part—that Plaintiff

experienced "increased shoulder and arm pain" when reaching overhead for more than one minute—is not particularly informative regarding whether Plaintiff's pain level would preclude her from doing the amount of reaching required to do sedentary work, and more importantly, reflects Plaintiff's subjective reporting of unquantified pain, which the ALJ was not obligated to account for in his RFC determination.  *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (holding that Commissioner is "not obliged to accept without question" the credibility of "subjective evidence of [claimant's] pain, based on her own testimony and the medical reports of examining physicians").  "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Id.*; *see Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" (quoting *Lennon v Waterfront Transport*, 20 F.3d 658, 663 (5th Cir. 1978)).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 16.)  Plaintiff does not challenge that finding, and it is supported throughout the record, including even in statements made by OT Vansaun in the FCE.  For example, the FCE states that Plaintiff "may underestimate her functional abilities" (AR 1731), and that "[t]here was some inconsistency between self[-]report of functional abilities and [Plaintiff's] demonstrated functional abilities" (AR 1730).

  **B.**  **Sitting Limitations**

Next, Plaintiff argues that the ALJ erred in his analysis of OT Vansaun's FCE by failing to incorporate into his RFC determination the FCE's finding that Plaintiff would be able to sit for

only 30 minutes before needing a five-minute break to change positions, and instead finding that Plaintiff required a five-minute break to change positions only once every 60 minutes. (Doc. 16-1 at 14.) According to Plaintiff, the ALJ should have "explain[ed] the reason for the discrepancy with the results of [Vansaun's FCE]." (*Id.*) I again find no error.

The ALJ recognized in his decision the FCE's finding that Plaintiff "exhibited the ability . . . to sit for at least 30 minutes" (AR 18), and in fact, the FCE states that Plaintiff "reports [30-minute] sitting tolerance and today . . . was able to sit for [30 minutes]" (AR 1730). Clearly, this finding is based on Plaintiff's subjective reporting, and thus the ALJ was not obliged to accept it, as discussed above. The FCE further states that Plaintiff "would be able to sit on up to [a] constant basis if she had [an] opportunity to stand, walk, [and] stretch [for] 5 minutes [every] 30 minutes." (*Id.*) The ALJ opted against adopting this finding, instead relying on the opinions of medical expert Dr. Washburn (*see* AR 73), and agency consultants Drs. Geoffrey Knisely and Donald Swartz (*see* AR 110, 128), that Plaintiff needs to "change positions every *hour* for about five minutes" (AR 73 (emphasis added)). Plaintiff does not challenge the ALJ's assessment of the persuasiveness of the opinions of Drs. Washburn, Knisely, and Swartz, and I find no error, as the ALJ considered the relevant regulatory factors, *see* 20 C.F.R. § 404.1520c(a)–(c), including most importantly supportability and consistency with the record, in his assessments of them. (*See* AR 17, 19.)

Although Drs. Washburn, Knisely, and Swartz never treated or examined Plaintiff, while OT Vansaun conducted an in-person "Initial Evaluation" of her, "the regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record." *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563 at 567–68 (2d Cir. 1993)); SSR 96-6p, 1996 WL 374180, at

11

*3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ properly cited to evidence in the record that supported the opinions of Drs. Washburn, Knisely, and Swartz regarding Plaintiff's sitting limitations, including treating provider Dr. Elizabeth Talbot's observation on examination that Plaintiff "was able to sit comfortably for about an hour." (AR 16 (citing AR 1467).)

## II. ALJ's Assessment of Plaintiff's Need to Be Off Task

Finally, Plaintiff argues that the ALJ did not adequately articulate how he evaluated "the opinions of [Plaintiff's] treating medical providers concerning the amount of time [Plaintiff] was likely to be 'off task' due to her pain and other symptoms." (Doc. 16-1 at 15.) In support of this argument, Plaintiff points to Dr. Washburn's testimony that the treating physicians would be better informed on this topic than he would as a non-treating expert. (*Id.*)

This argument may be deemed waived, as Plaintiff dedicates only one sentence to it and does not specify which medical opinions or other evidence support it, other than two pages of the VE's testimony at the administrative hearing. (*Id.* (citing AR 80–81).) "It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013).

Nonetheless, the argument is not persuasive, as Plaintiff has not shown that the ALJ applied an incorrect legal standard, and substantial evidence supports the ALJ's assessments that Plaintiff could "understand, remember[,] and carry out simple 1–3[-]step instructions" and "sustain concentration, persistence[,] and pace over a typical workday and workweek in a low[-]production setting (which should include no frequent task changes or high production norms")" (AR 15). Specifically, these assessments are supported by the following evidence: (1) the

opinions of nonexamining agency psychologists Drs. Hurley and Goldberg (*see* AR 111–12, 130); (2) the opinions of examining psychological consultant Dr. Sandra Campbell, who stated that Plaintiff "appears capable of understanding simple oral instructions and appears capable of carrying out simple instructions" (AR 807), and that, although Plaintiff "*might* need more than ordinary supervision due to difficulties with focus, concentration, and memory" (*id.* (emphasis added)), these difficulties "have been greatly alleviated by ADHD medication" (AR 805); (3) medical reports indicating that Plaintiff's attention, concentration, memory, and cognitive function were normal and intact (AR 586, 806, 1160); her intellectual capacity, IQ, and cognitive functions were in the average range (AR 583, 806, 1397, 1428); and her thought processes were linear and goal-oriented (AR 649, 1427); and (4) Plaintiff's own description of her strengths as including being a "quick problem-solver" and working in a "fast-paced work environment" (AR 1306). (*See* AR 14–18.) To the extent that Plaintiff references (without citing to) evidence in the record that is contrary to this evidence (*see* Doc. 16-1 at 15), "[i]t is for the [Social Security Administration], and not this court, to weigh the conflicting evidence in the record." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

## Conclusion

For these reasons, the Court DENIES Plaintiff's Motion (Doc. 16), GRANTS the Commissioner's motion (Doc. 17), and AFFIRMS the decision of the Commissioner. The Clerk shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 29th day of April 2022.

/s/ Kevin J. Doyle
United States Magistrate Judge